FOX et al. v. MILLER et al.

(Circuit Court of Appeals, Ninth Circuit. October 1, 1906.)

No. 1,310.

EASEMENTS—RIGHT OF WAY—MANNER OF USE—LOGS AND LOGGING—STREAMS.
 Where a lease gave the lessee a right of way 50 feet wide, to be used for logging, either for a road, flume, tram, or in any other manner the lessees might decide, and it was undisputed that a stream as used by the lessees was within the limits of the grant, the lessees were not confined to the use of the right of way for the purposes of a road, flume, or tram, but were entitled to use the stream to float logs.

Appeal from the Circuit Court of the United States for the District of Idaho.

The appellees are the owners of 15 acres of land lying in a triangular shape, with the apex to the south, from which point the hypothenuse, running northeasterly, is bounded by a county road. The land is traversed by a stream known as "Cowles' Creek," which flows through it into Loff's Bay, an arm of Lake Coeur d'Alene, on which the land abuts on the north. The stream enters the land near the apex of the triangle and runs parallel with and adjacent to the county road, until it reaches a point about 40 rods from the bay. At this point the main channel turns northwesterly, but for several years the stream has followed a second channel which leaves the main channel at the point above referred to, and runs northeasterly, parallel with and adjacent to the county road. The second channel carries nearly as much water as the main channel, and had been used for several years prior to 1904, during certain seasons of the year, for the purpose of transporting logs to the lake. The appellees' land traversed by these channels is low marshy ground, overflowed during the flood seasons and covered with a growth of willows. It has never been cleared or improved. In December, 1903, the appellants, who owned timber which they desired to transport to market across the land of the appellees, began negotiations with the latter to secure a right of way for that purpose.

The negotiations culminated in a lease made on January 9, 1904, by the appellees as parties of the first part to the appellants as parties of the second part, which provides as follows: "That the said parties of the first part do by these presents lease and demise unto the said party of the second part a right of way fifty feet wide, to be used for logging purposes either for a road, flume, tram or in any manner the party of the second part may decide upon as will best meet their needs, in the transportation of their logs or forest products; the said right of way commences at a point hereinafter mentioned and is described as follows, to-wit: Commencing at a point on the north line of the county road, where said road crosses the west line of the N. W. ¼ N. W. ¼ of sec. 35, T. 49 N. R. 4 W. B. M., thence running in a northerly direction paralleling the south bank of the creek (which creek crosses said west line of the said N. W. ¼ N. W. ¼, near the point where the said road does) about 20 rods, thence running in a northeasterly direction to the north line of said county road, thence paralleling said county road to the shore of Lake Coeur d'Alene, thence easterly along the south shore of Loff's Bay of Coeur d'Alene Lake about 30 rods to the point of rocks that extends out into said bay, to-

gether with the right to use the water front adjacent to said right of way for booming and landing purposes. It is expressly agreed between the parties hereto that, the rights above granted shall not conflict and may be amenable to grants or leases of like nature heretofore granted to others by the parties of the first part, with the appurtenances for the term of years which it may take to remove all the forest products of the party of the second part, which may be tributary to said Loff's Bay of Coeur d'Alene Lake, at the rent or sum of two hundred dollars payable in gold coin of the United States of America, for said period in advance. And it is hereby agreed, and not to let or underlet the whole or any part of said premises without the written consent of the said parties of the first part, except to parties taking contracts to remove forest products belonging to the party of the second part. And at the expiration of the said term, the said party of the second part will quit and surrender the said premises in as good state and condition as reasonable use and wear thereof will permit (damage by fire or elements excepted)."

At the time of the execution and delivery of this instrument the appellants paid to the appellees $200, the consideration therein provided for. In the fall of 1904 one McKenzie, who had a contract from the appellants to take out their logs, deepened and cleared out the right-hand channel of the creek, and ditched the northernmost 300 feet thereof. The appellees knew of this work at the time thereof, and made no objection thereto. On February 11, 1905, they filed their bill of complaint, alleging in substance that the appellants procured the lease by fraud and by fraudulent representation; that they represented that they were a corporation, whereas, in fact, they were a partnership; that they represented that the rent was to be $200 per annum, whereas by their fraud in drawing the lease the rent actually reserved therein was $200 for the entire term; that they expressly promised and agreed to use the right of way for no other purpose than for a flume, and expressly promised not to interfere with or disturb the soil; and that, in violation of these promises, they were engaged in digging a large ditch on the land of the appellees for the purpose of driving their logs and diverting the waters of Cowles' Creek into the ditch, which acts it was alleged would work irreparable injury to the appellees. The prayer of the bill was for the cancellation of the lease, for an injunction enjoining the appellants from asserting any right in the appellees' land, from interfering with the actual flow of Cowles' Creek, from continuing the construction of the ditch, and from interfering with the soil of the appellees' land. Issue was joined on these allegations of the bill, and on the testimony taken the trial court found that the appellants practiced no fraud in procuring the lease, but held that the lease itself conferred upon the appellants the right to use the right of way only for the purpose of a road, flume, or tram. Accordingly, the court entered a decree enjoining the appellants from using the right of way for any purpose other than for a road, flume, or tram, and enjoining them from excavating any ditch or canal thereon, and from in any wise disturbing the soil except for such purpose, and from running or floating any logs through the ditch which they had already constructed on said right of way.

From that decree the appeal is taken.

F. M. Dudley, for appellants.

W. T. Stoll and Edwin McBee, for appellees.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal question here presented, and the only one necessary to be decided, is what is the proper construction of the terms of the lease. The lease gives to the appellants "a right of way 50 feet wide to be used for logging purposes either for a road, flume, tram or in any

manner the party of the second part may decide upon as will best meet their needs in the transportation of their logs or forest products." The court below construed this to be a grant of a right of way for the purpose of a road, flume, or tram only, and held that the words which followed should be disregarded because vague and indefinite. We are unable to agree with this construction. The grant was of a right of way 50 feet wide for logging purposes. It is not disputed that the stream, as it was used by the appellants, was within the limits of the grant. It had been used for floating logs to the lake in the years 1902 and 1903. One of the appellees testified that at the beginning of the negotiations the agent of the appellants "spoke to me about getting a right of way through our land and for driving logs through the creek to get an outlet." The lease itself contains the provision that the rights thereby granted "shall not conflict and may be amenable to grants or leases of like nature heretofore granted to others by the parties of the first part." Such rights theretofore granted to others must have been rights to float logs through the creek, as no other use of the land for that purpose had been made.

The lease in specifying that it grants a right of way 50 feet wide to be used for logging purposes, either for road, flume, or tram, goes on to provide that it may be used in any manner the parties of the second part may decide upon, "as will best meet their needs." These words must have been inserted for a purpose. There was at least one way, other than the ways enumerated, in which the premises could be used, a way long used and recognized in logging, a way in which the premises had theretofore been used and in which they could be used with the least expenditure of money. That was by floating logs through the channel. That this was within the contemplation of the lessees is shown by the contemporaneous interpretation which they placed upon their grant. In the spring immediately following the execution of the lease they began to drive logs down the channel, and no objection was made by the appellees. In the following October the appellants improved the channel and ditched 300 feet thereof. The appellees, so far as they could do so by their silence, assented to this construction of the contract. They made no objection or protest until February, 1905. When they did have recourse to the law, it was in the first instance not for the purpose of disputing the construction which the appellants had placed on the lease or to enjoin them from using the ditch, but to enforce the payment of a second installment of rent, on the ground that the contract called for an annual payment of $200, instead of $200 for the entire term. The attendant circumstances, the antecedent use of the land, the contemporaneous construction placed upon the granted right by the grantee thereof, the acquiescence therein by the grantor, may all be referred to to determine the true construction of such an instrument. In view of all these considerations, and especially in view of the express terms of the lease, we entertain no doubt that it was the intention of the parties to the contract that the land might be used as it was used. The evidence of damages to the freehold resulting from ditching through a portion of the channel is not substantial or convincing.

The decree is reversed, and the cause is remanded, with instructions to dismiss the bill.